UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSHUA WHARTON; GAIL WHARTON;
and JONATHAN WHARTON,

                Plaintiffs,

   -against-                                      **MEMORANDUM AND ORDER**
                                                           07-CV-2137(RRM) (ETB)
COUNTY OF NASSAU; NASSAU COUNTY
POLICE DEPARTMENT; POLICE OFFICER
PHILLIP KOURIL; POLICE OFFICER
CHARLES DECARO and LIEUTENANT
MICHAEL H.MCGOVERN,

                Defendants.
------------------------------------------------------------X
MAUSKOPF, United States District Judge.

     Plaintiff, Joshua Wharton ("Wharton"), joined by his parents Gail and Jonathan Wharton, bring this civil rights action under 42 U.S.C. § 1983 and New York State law against the County of Nassau ("County of Nassau" or "County"), the Nassau County Police Department, Police Officers Phillip Kouril and Charles DeCaro, and Lieutenant Michael H. McGovern alleging false arrest, malicious prosecution, municipal liability, violation of equal protection rights, excessive force, and negligence. Defendants move, and Plaintiffs cross-move, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion is DENIED IN ITS ENTIRETY.

# BACKGROUND[1]

This action arises out of the January 20, 2004 arrest and subsequent prosecution of seventeen-year-old Joshua Wharton. Wharton was arrested following an altercation with Nassau County Police Officers Phillip Kouril and Charles DeCaro at a local Dunkin' Donuts franchise in Garden City Park, New York. Those events are summarized briefly as follows:

That evening, plain-clothed officers Kouril and DeCaro responded to a report of a disturbance at Mineola High School. In connection with this litigation, Kouril and DeCaro testified that, immediately prior to arriving on-scene, they passed a group of several black male teenagers heading north, away from Mineola High school and in the direction of the Dunkin' Donuts wherein Wharton was ultimately arrested.

Upon arriving at Mineola High School, Kouril and DeCaro claim that a school official reported that four to five males had been ejected from the gym for creating a disturbance. According to the officers, the school official identified one of the ejected youths as "Joshua." Based on that information, and believing that the subject youths were possibly those that they had driven past earlier, the officers left Mineola High School and headed north to investigate a possible trespassing. Approximately one block north, the officers observed two black teenagers inside the Dunkin' Donuts. They contend that these youths – later identified as Brian McGuad and "JJ" Snowden – were part of the group they had seen earlier.

It is not disputed that Kouril and DeCaro were in the process of questioning McGuad and Snowden about the Mineola High School incidents when Wharton, who had been at the Dunkin' Donuts counter, interjected.

---

[1] The Court relies upon the facts in the parties' Rule 56.1 statements that are supported by the admissible evidence and not controverted by the record.

According to Wharton, he asked JJ what was going on, and that the plain-clothes officers who had yet to identify themselves, told him to "shut up" and demanded that he produce identification. Wharton admits being uncooperative and that his response was: "Fuck that, I'm not talking to you." Wharton then claims that he left the officers and proceeded to sit down. According to Wharton, the officers followed him to his table where – unprovoked – one of them pushed it aside, placed him in a headlock, and brought him to the ground. Wharton claims that one officer repeatedly kneed him in the head while the other officer held his left wrist in a "wrist lock," and that while he tried to avoid the officer's blows, he did not resist arrest. Wharton further maintains that, at no time prior to the altercation did either Kouril or DeCaro identify themselves, and that he only realized they were police officers immediately before he was arrested when he heard the officers' walkie-talkies.

The officers paint a very different picture of the incident. They concede that they did not verbally identify themselves as law enforcement but state that their badges were displayed around their necks. The officers claim that upon questioning McGuad and Snowden, Wharton interrupted by telling his friends that they did not have to answer any questions. According to Kouril, Wharton stated, "[f]uck them. This is my hood and you don't have to speak to those fuckin' niggers." The officers allege that they asked Wharton for his identification and that he began screaming obscenities, and that customers were becoming alarmed and beginning to leave the store. The officers claim that they approached Wharton, and that he stood up and pushed the table into Kouril, stating "Fuck you" and "I don't give a shit." In response, the officers grabbed Wharton and pulled him to the ground. They testified that Wharton was flailing and resisting arrest, but that they were eventually able to handcuff him.

Following the arrest, Wharton was brought to the Third Precinct and placed in a holding cell. At the precinct, Kouril and DeCaro spoke with the Desk Officer, Lieutenant Michael McGovern, regarding the factual details of the arrest. Based on the officers' narratives, McGovern determined that the facts were sufficient to charge Wharton with disorderly conduct, obstructing governmental administration in the second degree, and resisting arrest.[2] In the early morning of January 21, 2004, Wharton was released from custody with a Desk Appearance Ticket.

Plaintiff was prosecuted in the Nassau County District Court, First District, County of Nassau, and between March 3, 2004 and February 23, 2006, Wharton was required to make at least sixteen court appearances in his criminal case. A bench trial took place on December 12 and 13, 2005, and in a decision rendered on April 24, 2006, the Honorable Sondra Pardes found Wharton not guilty on all charges.

On July 21, 2006, Plaintiffs served a Notice of Claim upon the Nassau County Attorney's Office, and on May 24, 2007, Plaintiffs initiated this action. Defendants answered on December 7, 2007. Thereafter, the parties conducted discovery. Both parties now move for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material facts exists "if the

---

[2] On June 18, 2004, the Nassau County District Attorney's Office charged Wharton with two additional counts of disorderly conduct.

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

## DISCUSSION

### I. Claims Against the Nassau County Police Department

Plaintiffs name the Nassau County Police Department as a defendant in this action. Defendants argue, and Plaintiffs concede, that the Nassau County Police Department is an administrative arm of the County of Nassau and therefore lacks the capacity to be sued. *See Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) ("[u]nder New York law, the Nassau County Police Department is considered an administrative arm of the County, without a legal identity separate and apart from the municipality and, therefore, without the capacity to sue or be sued."). Accordingly, Plaintiffs' claims against the Nassau County Police Department are dismissed.

### II. Statute of Limitations

Defendants argue that under *Wallace v. Kato*, 549 U.S. 384 (2007), Wharton's § 1983 false arrest claim is barred by New York's three-year statute of limitations. *See Preston v. New York*, 223 F. Supp. 2d 452, 467 (S.D.N.Y. 2002) (§ 1983 actions brought in New York have a three-year statute of limitations). In *Wallace*, the Supreme Court held "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. This decision constrained the scope of *Heck v. Humphrey*, 512 U.S. 477 (1994), wherein the Supreme Court previously held that a § 1983 action does not and cannot ripen "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned." *Heck*, 512 U.S. at 489. Thus, under *Heck*, the clock for a false arrest claim started not upon arrest, but only upon favorable disposition of the underlying charges. *Wallace* modified what courts had come to refer to as the

"*Heck* bar," by clarifying that *Heck* applies only where the § 1983 claim could invalidate an *existing* conviction. Anticipated future convictions, however, do not bar the accrual of a false arrest claim, which arises once the victim "becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389 (emphasis in original).

Applying the *Wallace* rationale in this case, Plaintiffs' § 1983 false arrest claim accrued on January 21, 2004 when Wharton was issued a desk appearance ticket and released from police custody and expired three years later on January 21, 2007. *See Weir v. City of New York*, No. 05 Civ. 9268, 2008 WL 3363129, at *10 (S.D.N.Y. Aug. 11, 2008) (plaintiff's § 1983 false arrest claim accrued when he was given the desk appearance ticket and released from the stationhouse). In this case, Plaintiffs did not file this action until May 24, 2007, over three years and four months later. Because *Wallace* applies retroactively, *see Mallard v. Potenza*, No. 08-cv-0455, -- F.3d --, 2010 WL 1879044, at *1 (2d Cir. May 12, 2010) (noting that the holding in *Wallace* itself indicates its retroactivity), Defendants contend that Plaintiffs' false arrest claim is time-barred. Plaintiffs appeal to principles of equity, arguing that if Defendants' motion for summary judgment were granted on statute of limitations grounds, Wharton would be "unfairly penalized for following the Second Circuit law as it existed in 2004" and "essentially be put in a position where he could never seek the redress that other similarly situated individuals have pursuant to 42 U.S.C. § 1983." Pl. Opp. at 6. This Court agrees.

Pre-*Wallace*, the law in this Circuit required that a § 1983 plaintiff alleging false arrest "pursue [his] criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992). In *Covington v. New York*, 171 F.3d 117 (2d Cir. 1999), the Second Circuit reiterated that if "success on a § 1983 claim

would necessarily imply the invalidity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." *Id.* at 124. Following this precedent, if Plaintiffs brought a false arrest claim prior to April 24, 2006, it would have created the "distinct possibility of an inconsistent result" in Wharton's parallel criminal case. However, following the *Wallace* decision issued on February 21, 2007, Plaintiffs' false arrest claim, which otherwise would have been viable, instantaneously became untimely.

In *Hargroves v. City of New York*, 694 F. Supp. 2d 198 (E.D.N.Y. 2010), this Court was faced with a similar scenario. In that case, also sounding in false arrest, plaintiffs were arraigned in late March 1998, convicted in 2000, and acquitted in 2002; however, they did not bring suit until 2003. Although under *Wallace*, plaintiffs' limitations period expired in March of 2001, this Court held that equitable tolling should be applied where a change in law retroactively time-barred a claim that was timely when filed. *Id.* at 211. This Court reasoned that the plaintiffs, having filed their complaint within a year of obtaining a favorable termination of the criminal charges, exercised reasonable diligence in pursuit of their claims, and that the "still-years-away change in law," which the Plaintiffs could not have predicted, constituted the type of "extraordinary circumstances" that justify the application of equitable tolling. *Id.*

For the same reasons announced in *Hargroves*, Plaintiffs in this case are entitled to equitable tolling on their § 1983 false arrest claim. Plaintiffs, through no fault of their own, relied on then-authoritative Second Circuit precedent to their detriment, and strict application of *Wallace* would effectively deprive Plaintiffs of their cause of action. *See Kucharski v. Leveille*, 526 F. Supp. 2d 768 (E.D. Mich. 2007) (equitably tolling plaintiffs' false arrest claim in light of the change in law occasioned by *Wallace*). Moreover, Plaintiffs have acted with reasonable

diligence to pursue their claims. Plaintiffs filed suit within thirteen months of obtaining a favorable termination, and while they had approximately ten months after Wharton's acquittal where the claim would have been timely even under *Wallace*, they could no better predict the upcoming change in law than the *Hargroves* plaintiffs. Finally, although Plaintiffs waited approximately three months after the *Wallace* decision to file their claim, this short delay is insufficient to diminish the extraordinary circumstance for which equitable tolling now applies. Accordingly, this Court finds that Plaintiffs' § 1983 false arrest claim is timely.

## III. False Arrest

The elements of a false arrest claim under 42 U.S.C. § 1983 are "substantially the same" as the elements of a false arrest claim under New York law.[3] *Posr v. Dougherty*, 944 F.2d 91, 96 (2d Cir. 1991). To establish a claim for false arrest under New York law, a plaintiff must show that (1) defendant intended to confine plaintiff, (2) plaintiff was conscious of confinement, (3) plaintiff did not consent to confinement, and (4) confinement was not otherwise privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotations omitted); *see also Decker v. Campus*, 981 F. Supp. 851, 856 (S.D.N.Y. 1996) ("If there existed probable cause at the time of the arrest, the arrest is 'privileged,' and the individual has no constitutional or statutory claim against the officer who made the arrest."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a

---

[3] Plaintiffs' Complaint alleges "false arrest" and "false imprisonment." These terms are "largely synonymous because an imprisonment starts at the moment of arrest." *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) (citing reference omitted). Therefore, the Court's finding with regard to one equally applies to the other.

person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 118-19 (citing reference omitted). In determining whether probable cause existed for Wharton's arrest, the Court must consider the "totality of the circumstances" in light of the facts known to Kouril and DeCaro at the time of the arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007) ("[p]robable cause is, of course, evaluated on the totality of the circumstances"); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) (holding officers acted reasonably considering only those facts that were actually available or could reasonably have been perceived by them, at the moment they engaged in the challenged conduct).

Here, Wharton was charged with five offenses arising out of the incident at the Dunkin' Donuts: obstructing governmental administration, N.Y. Pen. L. § 195.05; disorderly conduct, N.Y. Pen. L. § 240.20(1), (3), and (7); and resisting arrest, N.Y. Pen. L. § 205.30. Defendants argue that they had probable cause to arrest Wharton for each of these offenses and seek judgment as a matter of law. Upon a careful review of the record, however, and drawing all reasonable inferences in Plaintiffs' favor, as this Court must, it is evident that substantial disputes of material fact preclude summary disposition of these issues.

With respect to the charge of obstructing governmental administration, Kouril claims that Wharton interfered with their investigation by "intimidating his two friends and attempting to intimidate us by telling [his friends] not to talk to us. Telling them fuck them, this is [my] hood, he doesn't talk to niggers." Kouril Dep. at 109. Similarly, DeCaro states that "[w]e were trying to conduct an interview of two individuals who at the time of our interview we believed were unrelated to the individual behind me who started yelling, screaming, you know, basically instructed them not to talk to us." DeCaro Dep. at 49. However, Wharton testified that upon

10

seeing two men question his friends, he merely asked what was going on. Additionally, Wharton states that when the officers requested his identification, he simply walked away. Viewing these facts in the light most favorable to the non-movant, the Court cannot conclude as a matter of law that the officers had probable cause to arrest Wharton for obstructing governmental administration.

Similarly, disputed issues of material fact preclude a finding that the officers had probable cause to arrest Wharton for disorderly conduct. According to the officers, Wharton was creating a disturbance at Dunkin' Donuts by screaming, cursing and using obscenities such as "fuck" and "nigger," and that patrons were becoming scared and leaving. However, Wharton denies acting this way or using the word "nigger." He does admit raising his voice and stating, "Fuck that. I'm not talking to you"; however, the record is far from clear that he did so with the intent to cause public inconvenience, annoyance or alarm or recklessly created such a risk. *See* N.Y. Pen. L. § 240.20 ("A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof."). Additionally, Wharton denies pushing the table into Kouril and neither the Dunkin' Donuts employee witnesses who testified during Wharton's state court criminal trial nor the Dunkin' Donuts video footage support the officers' version of events. Therefore, the Court cannot conclude as a matter of law that Kouril and DeCaro had probable cause to arrest Wharton for disorderly conduct.

Finally, with respect to the resisting arrest charge, Kouril and DeCaro testified that as they attempted to handcuff Wharton, he fought back. They state that Wharton tried to pull away, flailed his arms, shrugged his shoulders, kicked his feet, and screamed fuck these niggers. However, Wharton insists that he did not fight back. Additionally, the video footage on this issue is inconclusive. Thus, the record contains disputed issues of fact as to whether Wharton

resisted arrest. In any event, to be guilty of the offense of resisting arrest, one must resist an "authorized arrest." N.Y. Pen. L. § 205.30. Since there are issues of fact as to whether Defendants had probable cause to arrest Wharton, Defendants' motion for summary judgment on Plaintiffs' § 1983 false arrest claim is denied.

## IV. Malicious Prosecution

Plaintiffs allege that Wharton was maliciously prosecuted in violation of his rights under 42 U.S.C. § 1983 and New York State law. The elements of a malicious prosecution under New York law are: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). In order to establish a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must assert, in addition to the elements of a malicious prosecution claim under state law, that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 118 F.3d 208, 215 (2d Cir. 2000).

Defendants argue that Plaintiffs' § 1983 malicious prosecution claim must be dismissed because Wharton's Fourth Amendment right to be free from arbitrary seizures was not implicated. However, conditions of pretrial release that limit travel or require repeated court appearances can constitute seizures within the meaning of the Fourth Amendment and are sufficient deprivations of freedom to sustain a § 1983 malicious prosecution claim. *See Rohman*, 215 F.3d at 216 (finding that repeated court appearances and requirement that Plaintiff "must render himself at all times amenable to the orders and processes of the court" demonstrated the requisite post-arraignment restraint); *see also Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997).

12

In the instant case, Wharton was required to appear for court on sixteen separate occasions, including two days of trial. Accordingly, Plaintiffs have demonstrated a sufficient post-arraignment deprivation of liberty to support their malicious prosecution claim.

As to the remaining elements of a viable malicious prosecution claim, namely the absence of probable cause and malice, the Court, for the reasons discussed above, finds genuine issues of material fact sufficient to preclude summary judgment.

Specifically, Wharton's behavior and demeanor in the Dunkin' Donuts prior to his arrest is vigorously disputed. Resolution by a jury of that issue is central to the question of probable cause. The contested probable cause issue also informs the malice element, as malice can be inferred from the absence of probable cause. Accordingly, a reasonable jury could credit Wharton and find that each malicious prosecution element - the commencement or continuation of a criminal proceeding, a favorable termination, the lack of probable cause, malice, and a post-arraignment liberty restraint - has been satisfied. Defendants' motion for summary judgment on Plaintiffs' § 1983 and New York State law malicious prosecution claims is therefore denied.

## V. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil liability, but only where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Specifically, qualified immunity exists where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007).

In favor of qualified immunity, Defendants argue that Kouril and DeCaro reasonably believed that there was probable cause to arrest Wharton based on the report of a disturbance as well as their observations and interactions inside the Dunkin' Donuts. As determined above, however, the events leading up to Wharton's arrest present genuine issues of material fact, and shall remain for jury determination. As such, qualified immunity as to Kouril and DeCaro cannot be resolved as a matter of law.

However, this Court concludes that Defendant McGovern is entitled to qualified immunity because he reasonably believed that the information he received from Kouril and DeCaro was sufficient to charge Wharton with the crimes for which he was arrested. The record reflects that McGovern did not directly participate in Wharton's arrest, and although he drew up the charges against Wharton, he did so based on the accounts of Kouril and DeCaro. At that time, McGovern had no reason to disbelieve his fellow officers and he was entitled to rely on their determination that probable cause existed to arrest Wharton. *See Loria v. Gorman*, 306 F.3d 1271 (2d Cir. 2002) (finding that officer was entitled to qualified immunity where he did not witness any unlawful activity and reasonably relied on his fellow officer's determination that the arrest was lawful). Accordingly, McGovern is entitled to qualified immunity, and Plaintiffs' claims against him are dismissed.

## VI.      Municipal Liability

Plaintiffs claim that the County failed to properly train its officers in determining the lawfulness of an arrest. To hold a municipality liable under § 1983, the plaintiff must first prove (a) the existence of a municipal policy or custom in order to show that the municipality took some action that caused injury and (b) a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 694 (1978); *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987).

Although lack of training can provide a basis for municipal liability, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989), Plaintiffs in this case have not presented any testimony from supervisory or training officers, training instruction materials, in-service memoranda, or legal bulletins sufficient to suggest the existence of the requisite municipal policy, custom or practice.[4] To the contrary, Plaintiffs rely solely on the testimony of Kouril, DeCaro and McGovern; however, nothing in their testimony suggests that the County failed to properly train its officers. In fact, Kouril, DeCaro and McGovern all testified that they were trained at the Nassau County Police Department and that they frequently receive legal bulletins and are provided with additional training opportunities. Moreover, Plaintiffs offer nothing more than naked allegations that the training opportunities provided are substantially deficient or in any other way inadequate.

Thus, based on a careful examination of the summary judgment record, this Court finds that no reasonable factfinder could conclude that the County of Nassau failed to properly train its officers. Plaintiffs' municipal liability claim is therefore dismissed.[5]

---

[4] Plaintiffs state that Defendants have "failed to produce any witnesses with regard to how these officers were trained, any training materials, in-service memorandums or legal bulletins in response to Plaintiff's demands." However, Plaintiffs failed to raise this objection during discovery, and have not demonstrated by affidavit, "that, for specified reasons, it cannot present facts essential to justify [their] opposition." *See* Fed. R. Civ. P. 56(f). As discovery has been closed for over a year and a half, Plaintiffs' request to reopen discovery is denied.

[5] Defendants also request that Plaintiffs' claims for punitive damages against the County of Nassau be dismissed. Defendants' request is granted. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-63 (1981) (holding that a municipality is immune from punitive damages under § 1983). However, to the extent that Defendants seek dismissal of Plaintiffs' claims for punitive damages against the individual defendants, that request is denied. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) ("[a]lthough a municipality itself is immune from a claim for punitive damages, that immunity does not extend to a municipal official sued in his individual capacity") (omitting internal citations).

## VII. Equal Protection Claim

Defendants move for summary judgment on Plaintiffs' equal protection claim.[6] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). Intentional discrimination can be demonstrated in several ways.

> First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. Lastly, a facially neutral statute violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect.

*Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (internal citations omitted).

Here, Plaintiffs argue that Wharton was arrested pursuant to facially neutral statutes because of his race and age.[7] They claim that the officers' investigation was motivated solely by unlawful race and age discrimination. However, that allegation is belied by the record, which reflects that Kouril and DeCaro questioned McGuad, Snowden and Wharton because they believed these individuals were the same teenagers they had observed earlier walking away from Mineola High School at the same time they received the report of a disturbance at the school, and because they matched the descriptions of several black teenagers that had been ejected from the

---

[6] Plaintiffs' Complaint does not expressly state an equal protection claim. They raise this cause of action for the first time in their opposition to Defendants' motion for summary judgment. On this basis alone, Plaintiffs' equal protection claim is dismissed. *See Casseus v. Verizon N.Y., Inc.*, No. 08-CV-4119, 2010 WL 2736935, at * 14 (E.D.N.Y. July 9, 2010) (citing cases) (a plaintiff may not raise new claims in his opposition to a summary judgment motion).

[7] Plaintiffs concede that they have not presented evidence that similarly situated individuals were treated differently than him. They state, "[i]ndeed, it would be impossible ... to demonstrate that white high school students were not arrested and charged for using Constitutionally First Amendment protected language in retaliation for using language which the police officers did not like." Pl. Opp. at 12.

school. In sum, there is no evidence in the record to suggest that Defendants discriminated against Wharton based on his race or age. *See Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) (stating that a plaintiff who alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection, but must still proffer evidence that defendants were motivated by discrimination); *see also Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (conclusory allegations are insufficient to establish discrimination). Accordingly, Plaintiffs' equal protection claim is dismissed.

## VIII. Excessive Force

Plaintiffs allege that Kouril and DeCaro used excessive force in effectuating Wharton's arrest. As previously stated, federal claims arising under § 1983 have a three-year statute of limitations. A claim for excessive force accrues when the use of force occurred. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). In this action, Plaintiffs' claim for excessive force arose on January 20, 2004, the date of Wharton's arrest. However, Plaintiffs did not bring suit until May 24, 2007, over three years later. Accordingly, Plaintiffs' excessive force claim is dismissed as time-barred.[8]

---

[8] Defendants argue that Plaintiffs' federal claims are time-barred; however, they do not specifically address Plaintiffs' excessive force claim. To the extent that Defendants' do not challenge this claim, the Court finds that a *sua sponte* dismissal under § 1983 "based on the statute of limitations is especially appropriate where, as in this case, the injuries complained of occurred more than [three] years before the filing of the complaint-well outside the applicable three-year limitations period, there are no applicable tolling provisions as a matter of law, and plaintiffs have alleged no facts indicating a continuous or ongoing violation of his constitutional rights." *Owens v. Harris*, No. 94 Civ. 5968, 1996 WL 399806, at *2 (S.D.N.Y. July 16, 1996) (quoting *Pino v. Ryan*, 49 F.3d 51 (2d Cir. 1995)).

## IX. State Law Claims

### a. False Arrest

Defendants argue that Plaintiffs' false arrest claim under New York State law must be dismissed as time-barred. Under New York General Municipal Law, an aggrieved individual is required to submit a notice of claim within ninety days after the state law claim arises and bring suit within one year and ninety-days "after the happening of the event upon which the claim is based." N.Y. Gen. L. §§ 50-e(1)(a) and 50-i(1). Here, Plaintiffs state law false arrest claim accrued on January 21, 2004.[9] However, since Plaintiffs did not file their notice of claim until July 21, 2006, over two years later, and did not bring suit until May 24, 2007, over three years later, Plaintiffs' state law false arrest claim is dismissed as untimely under N.Y. Gen. L. §§ 50-e(1)(a) and 50-i(1).[10]

### b. Malicious Prosecution

With respect to Plaintiff's New York State malicious prosecution claim, "federal and state courts have applied the statute of limitations for intentional torts against a municipality with conflicting results." *Lieber v. Village of Spring Valley*, 40 F. Supp. 2d 525, 533 (S.D.N.Y. 1999). This inconsistency arises because the statute of limitations under N.Y. C.P.L.R. § 215(3) for a claim of malicious prosecution is one year while the statute of limitations under N.Y. Gen. L. § 50-i(1) is one year and ninety-days.[11] In resolving this discrepancy, many of our sister

---

[9] Unlike federal law, which underwent a great deal of flux and uncertainty in light of *Heck* and *Wallace*, New York State law false arrest claims have consistently been deemed to accrue immediately upon the plaintiff's release from confinement. *See Hill v. City of New York*, No. 05 Civ. 9473, 2006 WL 2347739, at *3 (S.D.N.Y. Aug., 14, 2006) (rejecting plaintiff's assertion that a state law false arrest claim does not accrue until the criminal matter is terminated); *see also Roche v. Village of Tarrytown*, 309 A.D.2d 842 (2d Dep't 2003).

[10] To the extent that Plaintiff raises an excessive force claim pursuant to New York State law, that claim must also be dismissed at time-barred under N.Y. Gen. L §§ 50-e(1)(a) and 50-i(1).

[11] In this action, Plaintiff's state law malicious prosecution claim would be timely under N.Y. Gen. L. § 50-i(1) but untimely under N.Y. C.P.L.R. § 215(3).

courts have concluded that the one year and ninety-day limitations period under N.Y. Gen. L. § 50-i(1) applies to lawsuits brought against a municipality and its employees acting within the scope and duty of their employment. *See Niles v. City of Oneida*, No. 6:06-CV-1492, 2009 WL 799971, at *5 (N.D.N.Y. Mar. 25, 2009) (citing cases). After a careful review of the applicable statutes and the relevant case law on this issue, this Court concludes that the one year and ninety-day statute of limitations under N.Y. Gen. L. § 50-i(1) applies to Plaintiff's state law malicious prosecution claim brought against the County of Nassau and its employees. Since Plaintiffs brought suit within this timeframe, their state law malicious prosecution claim is timely. Accordingly, Defendants' motion for summary judgment as to this claim is denied.

### c. Negligence

Plaintiffs allege that Defendants were negligent in effectuating Wharton's arrest and in prosecuting him. However, "a plaintiff may not recover under general negligence principles for a claim that a defendant failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 629 (S.D.N.Y. 1999). Moreover, Plaintiffs failed to file a notice of claim with the County of Nassau or commence this action within the time periods prescribed under N.Y. Gen. L. §§ 50-e and 50-i. *See Martin v. Cnty. of Nassau*, 692 F. Supp. 2d 282, 290 (E.D.N.Y. 2010) (dismissing state law claims as untimely). Accordingly, Plaintiffs' negligence claim is dismissed.

## X. Plaintiffs' Motion for Summary Judgment

Plaintiffs cross-move for summary judgment on their false arrest, malicious prosecution, and municipal liability claims. Plaintiffs also seek summary judgment dismissing Defendants' qualified immunity defense. However, as discussed above, numerous disputes of material fact preclude summary judgment. Therefore, Plaintiffs' cross-motion is denied.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment is denied in its entirety. The Court makes the following rulings:

1. Defendants' motion for summary judgment as to Plaintiffs' New York State law false arrest claim, § 1983 and New York State law excessive force claims, municipal liability claim, equal protection claim, and negligence claim is GRANTED;

2. Defendants' motion for summary judgment as to the Nassau County Police Department is GRANTED;

3. Defendants' motion for summary judgment as to Plaintiffs' claims against McGovern based on qualified immunity is GRANTED;

4. Defendants' motion for summary judgment as to Plaintiffs' § 1983 false arrest claim and § 1983 and New York State law malicious prosecution claims is DENIED;

5. Plaintiffs' cross-motion for summary judgment is DENIED in its entirety;

The case is recommitted to the assigned Magistrate Judge for settlement discussions and remaining pretrial issues, and if necessary, the preparation of a joint pretrial order.

SO ORDERED.

Dated: Brooklyn, New York
September 20, 2010

ROSLYNN R. MAUSKOPF
United States District Judge